UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────

SUSAN TIMIAN,

              Plaintiff,          **No. 6:15-cv-06125(MAT)**
                                  **DECISION AND ORDER**
     -vs-

JOHNSON & JOHNSON,

              Defendant.

─────────────────────────────────

## INTRODUCTION

Represented by counsel, Susan Timian ("Plaintiff") instituted this action against her former employer, Johnson & Johnson ("Defendant"), seeking declaratory relief and monetary damages under the Employee Retirement and Income Securities Act, 29 U.S.C. §1001 et seq. ("ERISA") and New York State contract law. Plaintiff alleges that Defendant improperly withheld certain unvested Restricted Stock Units awarded to Plaintiff pursuant to Defendant's Long-Term Incentive Plan. Plaintiff invokes federal question jurisdiction, diversity jurisdiction, and jurisdiction under ERISA.

Defendant has filed a Motion to Dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). Plaintiff filed a Memorandum of Law in Opposition, and Defendant filed a Reply Memorandum of Law. For the reasons discussed below, Defendant's Motion to Dismiss is granted, and the Complaint is dismissed.

-1-

**FACTUAL BACKGROUND**

In January 2006, Plaintiff commenced employment with Defendant as a patent attorney, providing legal services to one of its subsidiaries, Ortho-Clinical Diagnostics, Inc. ("OCD"). Defendant maintained a Long-Term Incentive Plan ("the LTI Plan" or "the Plan") to provide "long-term incentives" for its employees, including Restricted Stock Unit ("RSU") awards, which are "[a]ward(s) of a right to receive an amount based on the Fair Market Value of a share of Common Stock [of Defendant], subject to such terms and conditions as the Administrator may establish." LTI Plan, attached to Defendant's Motion to Dismiss as Exhibit A ("Def's Ex. A").[1]  For all the years that Plaintiff received a ranking of "performance consistently meets and sometimes exceeds job standards," she was awarded RSUs for her past performance, and her new annual compensation was presented to her with a calculation of the RSUs for that year.

The LTI Plan provides that the RSU awards have a vesting period of three years. With various exceptions not relevant here, an employee was required to be employed by Defendant on the three-

---

[1]

Though Plaintiff did not attach the LTI Plan to her Complaint, Defendant submitted the LTI Plan, the LTI Plan Prospectus, and an RSU Certificate in support of its motion to dismiss. The Court properly may consider these documents in resolving Defendant's motion to dismiss. See Rothman v. Gregor, 220 F.3d 81, 88-89 (2d Cir. 2000) ("For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference, . . . and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit[.]") (internal and other citations omitted).

year vesting date in order to receive the value of the RSUs.

In early 2013, Defendant began discussions to sell OCD. The patent attorneys supporting OCD, including Plaintiff, were included as assets to the sale and were not allowed to look for work within Defendant or any of its companies. Plaintiff indicates that the patent attorneys were forced to either leave Defendant's employment or become an employee of OCD after the sale.

In January 2014, Defendant announced its formal intention to sell OCD to The Carlyle Group. In February 2014, Defendant awarded Plaintiff RSUs based on her 2013 work performance.

On June 29, 2014, Defendant's sale of OCD became final, Plaintiff's employment with Defendant terminated, and she became an employee of OCD. Upon the sale of OCD, Defendant terminated the RSUs granted to Plaintiff in 2012, 2013, and 2014, on the basis that these RSUs had not vested prior to the termination of Plaintiff's employment. That is, Plaintiff's employment ended prior to the three-year vesting period for all of the RSUs awarded. Plaintiff alleges she lost the full value of the RSUs awarded in 2012, 2013, and 2014, which exceeds $75,000.

## RULE 12(b)(6) STANDARD

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept "all factual allegations in the complaint and draw . . . all reasonable inferences in the plaintiff's favor." Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008)

(internal quotation marks omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). In order to withstand dismissal, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. Conclusory allegations are not entitled to any assumption of truth and will not support a finding that the plaintiff has stated a valid claim. Lundy v. Catholic Health System of Long Island, Inc., 711 F.3d 106, 113 (2d Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678, 679 (2009)). As the Second Circuit has noted, "at a bare minimum, the operative standard requires the 'plaintiff [to] provide the grounds upon which [her] claim rests through factual allegations sufficient to raise a right to relief above the speculative level.'" ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Twombly, 550 U.S. at 555).

## DISCUSSION

### I.   ERISA Claims (First and Second Causes of Action)

Plaintiff alleges that "upon information and belief," the LTI Plan is an ERISA-governed plan, and that "upon information and belief," Defendant is the fiduciary of that plan. Complaint

-4-

("Comp.") ¶ 23. She asserts claims for breach of fiduciary and estoppel under ERISA § 502(a), without specifying a particular subsection.[2] Plaintiff seeks to recover damages for "the amount of the RSUs that were not paid to [Plaintiff] at the time of her separation of employment." Comp. ¶¶ 45, 52. Defendant has moved to dismiss these claims on the bases that the LTI Plan is not an ERISA-governed plan; that Plaintiff's request for monetary damages is not cognizable under the ERISA provision that allows for individual, rather than plan, relief; and that the Complaint fails to state causes of action for fiduciary duty and estoppel. As discussed further below, the Court finds that the LTI Plan is not an ERISA-governed plan, and it therefore need not reach Defendant's alternative grounds for dismissal.

### A. Determining the Existence of an ERISA Plan on a Rule 12(b)(6) Motion

Where, as here, "the record contains the undisputed terms of the disputed plan, . . . a [c]ourt *may* decide the applicability of ERISA as a matter of law.'" Kuhbier v. McCartney, Verrino & Rosenberry Vested Producer Plan, --- F. Supp.3d ----, 2015 WL 1332354, at *5 (S.D.N.Y. Mar. 25, 2015) (quoting Foster v. Bell Atl. Tricon Leasing Corp., No. 93-CV-4527, 1994 WL 150830, at *1

---

[2]

    The only subsection of ERISA § 502(a) that provides a cause of action for individual, rather than plan, relief based on a breach of fiduciary duty is ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). See Coan v. Kaufman, 457 F.3d 250, 262-63 (2d Cir. 2006). ERISA § 502(a)(3) provides only for "equitable relief." See 29 U.S.C. § 1132(a)(3); Coan, 457 F.3d at 262-63.

(S.D.N.Y. Apr. 20, 1994) (ellipsis, brackets, and emphasis in original; citing Albers v. Guardian Life Ins. Co. of Am., No. 98-CV-6244, 1999 WL 228367, at *2 (S.D.N.Y. Apr. 19, 1999) (Chin, D.J.) (noting that the applicability of ERISA "is cognizable on a Rule 12(b)(6) motion" where the record contains the undisputed terms of a disputed plan) (collecting cases)).

"To state a claim under ERISA, a plaintiff must allege and establish the existence of an 'employee benefit plan' that is governed by ERISA." Albers, 1999 WL 228367, at *2 (citing 29 U.S.C. § 1003(a)). For purposes of the statute, a covered "employee benefit plan" is either an "employee pension benefit plan," an "employee welfare benefit plan," or a plan that is both. See 29 U.S.C. § 1002(1)-(3). The Court accordingly must determine whether the LTI Plan is an "employee pension benefit plan," 29 U.S.C. § 1002(1), or an "employee welfare benefit plan," id. § 1002(2).

### B.   The LTI Plan is Not a Welfare Benefit Plan

The definition of "employee welfare benefit plan" in 29 U.S.C. § 1002(1) "can be broken down into five elements: (1) a 'plan, fund, or program' (2) established or maintained (3) by an employer . . . (4) for the purpose of providing medical, surgical, [or] hospital care . . . benefits . . . (5) to participants or their beneficiaries." Peckham v. Gem State Mut. of Utah, 964 F.2d 1043, 1047 (10th Cir. 1992) (quoting Donovan v. Dillingham, 688 F.2d 1367, 1371 (11th Cir. 1982); citing Wickman v. Northwest Nat'l Ins.

Co., 908 F.2d 1077, 1082 (1st Cir.), cert. denied, 498 U.S. 1013
(1990); other citation omitted)). Even assuming that elements (1),
(2), (3), and (5) are satisfied, Plaintiff cannot satisfy element
(4), the "purpose" requirement, as discussed further below.

The LTI Plan indicates that its purposes are

> to provide long-term incentives to those persons with
> responsibility for the success and growth of the Company
> and its subsidiaries and affiliated entities, to
> associate more closely the interests of such persons with
> those of the Company's shareholders, to assist the
> Company and its subsidiaries and affiliated entities in
> recruiting, retaining and motivating a diverse and
> talented group of employees on a competitive basis, and
> to ensure a pay for performance linkage for such persons.

LTI Plan, § 1. The Plan provides for the granting of several types
of "equity awards[,]" including restricted shares and RSUs,[3] as
well as stock options, stock appreciation rights, performance
shares, and performance share units. See LTI Plan Prospectus, p. 3;
LTI Plan, § 7. In contrast, an ERISA "welfare benefit plan" is
established *for the purpose of* providing its participants or their
beneficiaries benefits such as health care, vacation, disability,
and unemployment. See 29 U.S.C. § 1002(1). While the Second Circuit
has not yet addressed this issue, Federal appellate and district
courts consistently have held that incentive plans premised on the

---

[3]
"A Restricted Share Unit is an Award of a right to receive an amount based
on the Fair Market Value of a share of Common Stock, subject to such terms and
conditions as the Administrator may establish. . . . Any person who holds
Restricted Share Units shall have no ownership interest in the shares of Common
Stock to which such Restricted Share Units relate until and unless payment with
respect to such Restricted Share Units are actually made in shares of Common
Stock." LTI Plan, § 7(c)(iv).

award of stock options to employees, similar to the LTI Plan, are not "employee welfare benefit plans." See, e.g., Oatway v. American Int'l Group, Inc., 325 F.3d 184, 189 (3d Cir. 2003) (stock option incentive plan intended to improve employee performance and retention was not "employee welfare benefit plan"); Emmebegger v. Bull Moose Tube Co., 197 F.3d 929, 932-33 (8th Cir. 1999) (stock-based incentive plan designed to encourage employee retention was "bonus program" and not "employee welfare benefit plan"); Murphy v. Inexco Oil Co., 611 F.2d 570, (5th Cir. 1980) (bonus plan intended to reward employees for service was not "employee welfare benefit plan"); Hahn v. National Westminster Bank, N.A., 99 F. Supp.2d 275, 278 n. 2 (E.D.N.Y. 2000) ("phantom stock plan" created to provide employees with financial incentives "does not fall into the statutory definition of . . . a[n] [employee welfare benefit] plan since it was clearly not established to provide the benefits referred to [in 29 U.S.C. § 1002(1)]"); other citation omitted). In Murphy, for example, the employer instituted a bonus program for selected employees by assigning an interest in a drilling prospect on their behalf to a third party to administer the interest. 611 F.2d at 572. The interest, which the employee owned after retirement, was based on factors including the employee's length of service and nature of his or her contribution to the company. Id. at 572-73. In the event of termination, the employee was divested of the interest. Id. at 573 n. 3. The Fifth Circuit held that the

plan was not an ERISA-governed "employee benefit plan" because the bonuses were discretionary and were awarded in addition to the employee's regular salary. Id. at 574 (noting that it was "evident" the "primary purpose of the [bonus plan] was to reward employees for their service with present benefits"). Here, as in Murphy, the LTI Plan is discretionary and has the stated purpose of providing long-term incentives to those employees "with responsibility for the success and growth of the Company[.]" The plain language of the LTI Plan is clear that it was not "established or maintained for the purpose of providing for its participants . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services[,]" 29 U.S.C. § 1002(1)(A), or similar benefits. Therefore, the Court finds that the LTI Plan is not an "employee welfare benefit plan" as defined by ERISA.

### C.   The LTI Plan is Not a Pension Benefit Plan

For purposes of ERISA, an "employee pension benefit plan" is "any plan, fund, or program which . . . is . . . established or maintained by an employer . . . to the extent that *by its express terms or as a result of surrounding circumstances* such plan, fund, or program—(i) provides retirement income to employees, or (ii) *results in a deferral of income by employees for periods extending*

-9-

*to the termination of covered employment or beyond*, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan." 29 U.S.C. § 1002(2)(A) (emphases supplied). Thus, bonus and incentive plans are excluded from the umbrella of ERISA coverage unless certain conditions are met. The Department of Labor ("DOL") has issued regulations indicating that "the terms 'employee pension benefit plan' and 'pension plan' shall not include payments made by an employer to some or all of its employees as bonuses for work performed, *unless such payments are systematically deferred to the termination of covered employment or beyond*, *or so as to provide retirement income to employees*." 29 C.F.R. § 2510.3-2(c) (emphasis supplied). The question for the Court therefore is whether payments under the LTI Plan are "systematically deferred" to the termination of Plaintiff's employment, or deferred so as to provide retirement income. See id.

Plaintiff asserts the LTI Plan allows for deferral of payments and argues that whether any plan gives rise to the "systematic" deferral of payment of benefits to termination or beyond depends on the specific facts and circumstances of the plan. Plaintiff urges the Court to conclude that, at this stage, it cannot undertake the necessary analysis because discovery has not occurred. See Pl's Mem. at 6-7. Defendant asserts that the LTI

Plan's express terms establish that there is no "systematic deferral" because RSUs, with limited exceptions not applicable here, can vest *only* during employment. <u>See</u> RSU Certificates, § 2(a), (b), Def's Ex. B. Defendant notes that the RSU Certificates provide in pertinent part as follows:

> (a) General. Except as otherwise provided in this Section 2, each RSU granted herein shall be vested on the Vesting Date, <u>provided</u> <u>that</u> on the Vesting Date, you are, and have been at all times since the Grant Date, an employee of the Company. . . .

> (b) Termination of Employment. If, prior to the Vesting Date, you cease to be employed by the Company *for any reason*, including termination for cause, then unless otherwise provided in Section 2(c), 2(d), 2(e), or 2(f)[4] hereof, *the RSUs shall become null and void on the Date of Termination*.
> . . .

RSU Certificate ("RSU Cert."), § 2(a), (b) (italics supplied; underlining in original).

The Court finds that the express terms of the LTI Plan dictate that in the event an employee "cease[s] to be employed by the Company for any reason" "prior to the Vesting Date," the "RSUs *shall become null and void* on the Date of Termination." RSU Cert.,

---

[4]
    The enumerated exceptions in the RSU Certificate address employment termination due to death, disability, and retirement. With regard to termination due to retirement, the RSU Certificate provides for the vesting of unvested RSUs *only* if the employee retires from Defendant without being terminated "for [c]ause" and either the employee has "at least ten (10) years of [s]ervice with at least five (5) consecutive years of [s]ervice before" the date of termination, or the employee has "attained age 62 as of" the date of termination. <u>See</u> RSU Cert. § 2(e). Plaintiff characterizes her termination in June 2014, as a "retirement," Comp. ¶ 35. However, she neither had ten years of service nor had she reached age 62, <u>see</u> <u>id.</u> ¶¶ 9, 35, as required for vesting-by-retirement under Section 2(e) of the RSU Certificate. And, none of the other enumerated exceptions possibly apply to Plaintiff's case.

§ 2(b) (emphasis supplied). Therefore, the LTI Plan does not provide for the "systematic[ ] deferr[al] [of RSU awards] to the termination of covered employment or beyond;" rather, termination of employment nullifies and voids an RSU award, except under circumstances not applicable here. Furthermore, as noted above, the LTI Plan's stated purpose does not include the provision of retirement benefits or benefits after termination of employment. To the contrary, "it is clear that the [LTI Plan] was created to provide additional compensation to current employees in recognition of their value to [Defendant][,]" Hahn, 99 F. Supp.2d at 279, and to "assist" in "retaining" valued employees, see LTI Plan § 1. The LTI Plan's "express statement of purpose" "is entitled to weight when determining the nature of the plan." Hahn, 99 F. Supp.2d at 279. Courts consistently have found similar incentive or bonus plans not to be ERISA-governed "employee pension benefit plans." See, e.g., Murphy, 611 F.2d at 575; Copley v. Medpace, Inc., No. 1:12-cv-426, 2013 WL 589158, at *6 (S.D. Ohio Feb. 14, 2013), R&R adopted, 2013 WL 1196609 (S.D. Ohio Mar. 25, 2013); Prieto v. Election.com, No. 04-CV-4413(DRH)(MLO), 2005 WL 3560596, at *4 (E.D.N.Y. Dec. 29, 2005); Goodrich v. CML Fiberoptics, Inc., 990 F. Supp. 48, 50 (D. Mass. 1998); Int'l Paper Co. v. Suwyn, 978 F. Supp. 506, 511 (S.D.N.Y. 1997); Laflan v. Electr. Data Sys. Corp., 856 F. Supp. 339, 345 (E.D. Mich. 1994).

Plaintiff cites Tolbert v. BBC Cap. Markets Corp., 758 F.3d

619 (5th Cir. 2014), in which the circuit court addressed whether an employer's "wealth accumulation plan" was an "employee pension benefit plan" and found it to be governed by ERISA. In contrast to the LTI Plan, the plan in <u>Tolbert</u> explicitly stated it was a "deferred compensation plan," and it allowed participants the option to defer any account distribution until the termination of their employment, as well as provided them with an option to receive installment payments during retirement. Although the LTI Plan contemplates the possibility of the deferral of awards, such deferral lies within the sole discretion of the LTI Plan Administrator,[5] and the deferral period cannot extend past the termination of employment. The "mere fact that some payments under a plan may be made after the employee has retired or left the company does not result in ERISA coverage." <u>Hahn</u>, 99 F. Supp.2d at 279 (quoting <u>Murphy</u>, 611 F.2d at 575). Therefore, the Court finds that <u>Tolbert</u> does not alter its conclusion that the LTI Plan is not an employee pension benefit plan.

## II.  Breach of Contract (Third Cause of Action)

### A.   Choice of Law

Although Plaintiff purports to assert her breach of contract claims under New York law, <u>see</u> Comp. ¶¶ 58, 63, the LTI Plan and RSU Certificate specify that they are governed by New Jersey law.

---

[5]

The LTI Plan states that the Administrator "may, in its sole discretion, approve deferral elections made by Participants." LTI Plan a§ 9.

See LTI Plan § 16(o), RSU Cert. § 9(b). Although Defendant argues that these choice-of-law provisions should be given effect, it does not cite any New Jersey law in support of its argument, and argues that the result is the same whether New Jersey or New York law is applied. See Def's Mem. at 12-13 & n. 4. Plaintiff does not argue that the result is different with regard to her claim regarding the alleged breach of the LTI Plan.

### B.   Alleged Breach of LTI Plan

Under New York law, to state a claim for breach of contract, a plaintiff must allege (1) a contract between the parties; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages flowing from the breach. E.g., Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525 (2d Cir. 1994) (citation omitted). "When pleading these elements, a plaintiff must identify the specific provision of the contract that was breached as a result of the acts at issue." Wolff v. Rare Medium, Inc., 210 F. Supp.2d 490, 494 (S.D.N.Y. 2002) (citing Lew v. Bessemer Trust Co., N.A., No. 97 Civ. 1785(JFK), 1997 WL 431079, at *5 (S.D.N.Y. 1997)).

Plaintiff asserts that Defendant "breached the terms of [the LTI] Plan when it terminated [her] RSUs upon the sale of [OCD]." Comp. ¶ 57. Although Plaintiff seeks to base this claim on the express terms of the "LTI Plan and incorporated Restrictive [sic] Stock Certificate[,]" id. ¶ 55, the Complaint does not identify any

terms of the LTI Plan or RSU Certificate that were breached. The Court thus is required to examine the LTI Plan's terms to see if Plaintiff is contractually entitled to payment of her RSU awards from 2012, 2013, 2014.

"It is well established under New York law that '[a]n employee's entitlement to a bonus is governed by the terms of the employer's bonus plan.'" O'Dell v. Trans World Entm't Corp., 153 F. Supp.2d 378, 397 (S.D.N.Y. 2001) (quoting Hall v. United Parcel Serv. of Am., Inc., 76 N.Y.2d 27, 36 (1990)); accord Karmilowicz v. Hartford Fin. Servs. Group, No. 11 Civ. 539(CM)(DCF), 2011 WL 2936013, at *7 (S.D.N.Y. July 4, 2011), aff'd, 494 F. App'x 153 (2d Cir. 2012). It is similarly well-established that "an employee cannot recover for an employer's failure to pay a bonus under a plan that provides the employer with absolute discretion in deciding whether to pay the bonus." Smith v. Railworks Corp., No. 10 Civ. 3980(NRB), 2011 WL 2016293, at *3 (S.D.N.Y. May 17, 2011) (citing Namad v. Salomon Inc., 74 N.Y.2d 751, 752–53 (1989) (affirming dismissal where "the bonus clause unambiguously vests discretion regarding the amount of bonus compensation to be awarded in defendants' management"); Bessemer Trust Co., N.A. v. Branin, 618 F.3d 76, 92 (2d Cir. 2010) (affirming dismissal where the bonus provision "reserve[d] to the Salary Committee the decision to award or not to award a bonus, and in what amount")). In Karmilowicz v. Hartford Fin. Servs., Inc., 494 F. App'x 153 (2d Cir. 2012)

(unpublished opn.), the plaintiff attempted to bring a breach of contract claim based on certain long-term incentive plans, each of which "expressly stated that potential payments were within the sole, absolute, and exclusive discretion of The Hartford, that no employee had a right to any such payment until it was, in fact, paid, and that active employment[6] with The Hartford was a condition precedent to receiving payment." Id. at 157. The Second Circuit found that "[g]iven the plain language in the compensation plans, the District Court was clearly correct to conclude that Karmilowicz could not state a claim for breach of contract under New York law." Id. (footnote omitted).

Here, the LTI Plan similarly invests the Plan Administrator with wide-ranging and exclusive authority "to do all things that it determines to be necessary or appropriate in connection with the administration of the Plan," including, "without limitation," the authority to select the employees to be granted awards under the Plan; to determine the timing of awards and any conditions that must be satisfied before an award is granted; to determine the circumstances under which awards become exercisable or vested or are forfeited to expire; and to establish and verify the extent of satisfaction of any performance goals or other conditions

---

6

The plans at issue "conditioned the receipt of any payment by mandating that only 'active employees . . . [with] continued employment through the payout date' are eligible to receive incentive awards." Karmilowicz, 494 F. App'x at 157 (alteration and ellipsis in original).

applicable to the grant, issuance, exercisability, vesting, or ability to retain such awards. See LTI Plan § 3(b). According to the LTI Plan, the "decisions, determinations, interpretations and actions taken by the Administrator regarding the [LTI] Plan . . . shall be conclusive and binding on all parties concerned[.]" Id. § 4. In addition, the RSU Certificate governing each of the RSU awards to Plaintiff specifically provides that "[i]f, prior to the Vesting date [of the RSU]," Plaintiff "cease[s] to be employed by the Company for any reason," "the RSUs *shall become null and void* on the Date of Termination." RSU Cert., § 2(b) (emphasis supplied). As noted above, Plaintiff does not and cannot argue that any of the exceptions to the nullification-upon-termination provision apply to her situation. The Court must conclude that the plain terms of the RSU Certificates, incorporated into the LTI Plan, preclude Plaintiff from stating a plausible breach of contract claim based on Defendant violating any provision of the LTI Plan.

Plaintiff also asserts that the LTI Plan's language is ambiguous insofar as it is "silent on how the RSUs should be treated in the event of a sale of the business." Pl's Br. at 13. The Court agrees with Defendant that the LTI Plan does address the terms and conditions of unvested RSUs if an employee "cease[s] to be employed by the Company *for any reason*[,]" RSU Cert. § 2(b) (emphasis supplied), that is, it unequivocally states that the unvested RSUs "shall become null and void[.]" Id. The Court cannot

find the phrase, "cease[s] to be employed by the Company *for any reason*[,]" to be ambiguous. First, Plaintiff's allegations indicate that she "ceased to be employed" by Defendant when OCD was sold. See Comp. ¶ 34 (when Defendant's sale of OCD became final, and she "became an employee of OCD"); see also id. ¶¶ 1 (referring to Plaintiff's "separation of employement"); 27 (employees of OCD "were forced to either voluntarily leave Defendant's employment or become an employee of OCD after the sale" of Defendant), 29 (noting that Plaintiff "was inevitably going to become an OCD employee based on the terms of the sale"). As there can be no dispute that Plaintiff ceased to be employed by Defendant upon the sale of OCD, the only possible ambiguity could reside in the phrase, "for any reason."

"Language is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement[.]" O'Neil v. Ret. Plan for Salaried Employees of RGO Gen., Inc., 37 F.3d 55, 58-59 (2d Cir. 1994) (internal quotation marks and citations omitted). In the context of statutory interpretation, the Supreme Court has observed that use of the word "any" generally indicates a legislative "intent to sweep broadly to reach all varieties of the item referenced." Cohen v. JP Morgan Chase & Co., 498 F.3d 111, 117 (2d Cir. 2007) (citing, inter alia, United States v. Gonzales, 520 U.S. 1, 5 (1997) (concluding that, "[r]ead

naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind'") (quotation omitted)). Viewing the phrase "any reason" objectively and in the context of the LTI Plan and RSU Certificate, the Court simply cannot find ambiguity. There is no reasonable inference from the context of the pertinent documents that "any" was intended to have a limited as opposed to an expansive meaning. Plaintiff has suggested no plausible basis for finding ambiguity apart from the documents' alleged silence. However, "[s]ilence, or omission of a term, however, does not generally create ambiguity." Spinelli v. Nat'l Football League, --- F. Supp.3d ----, 2015 WL 1433370, at *34 (S.D.N.Y. Mar. 27, 2015) (quotation and citations omitted)). The Court declines to equate silence with ambiguity in this case and finds that the LTI Plan and RSU Certificate are not ambiguous.

### B.   Breach of Implied Contract Between Employee and Employer (New Theory)

Plaintiff asserts for the first time in her opposition memorandum of law a breach of contract claim premised on Defendant's alleged breach of the employer-employee relationship. See Pl's Br. at 13-14.[7] According to Plaintiff, Defendant represented that the RSUs were "an integral portion of [Plaintiff]'s compensation package," which "became an inherent part

---

[7]
    Plaintiff acknowledges that this theory of relief was not pled explicitly in the Complaint but argues that Defendant had sufficient notice of it. Alternatively, Plaintiff requests leave to amend. See id. n. 3.

of her contract of employment." Id. at 14. This argument is
untenable in light of the plain terms of the LTI Plan, which has a
provision titled, "Rights to Employment or Service; No Rights to
Awards," LTI Plan § 16(d), and states explicitly that

> Awards are not a constituent part of salary . . . [and]
> . . . the value of Awards received under the Plan shall
> be excluded from the calculation of termination
> indemnities or other severance payments. . . .

Id. § 16(d)(ii)-(iii). Plaintiff also asserts that Defendant
breached the contract "by deeming her RSUs forfeited upon the
separation of her employment." Pl's Mem. at 14. The terms of the
LTI Plan likewise renders this argument unsupportable, given that
Section 16 further states that

> [n]either the Plan nor any action taken hereunder shall
> be construed as giving any person any right to be
> retained in the employ or service of [Defendant] or any
> of its subsidiaries or affiliates, and the Plan shall not
> interfere with or limit in any way the right of the
> [Defendant] or any of its subsidiaries or affiliates to
> terminate any person's employment or service at any time.
> Except as set forth herein, no employee or other person
> shall have any claim or right to be granted an Award
> under the Plan.

LTI Plan § 16(d). Finally, Section 16 states that "[b]y accepting
an Award, the Participant acknowledges and agrees that . . . the
Award shall be exclusively governed by the terms and conditions of
the Plan. . . ." Id. Here, Plaintiff accepted awards of RSUs on
multiple occasions and, in so doing, agreed that the LTI Plan would
"exclusively govern[ ]" those awards. Thus, even assuming there was
an implied contractual relationship between herself and Defendant

based on the employer-employee relationship, Plaintiff has no basis for arguing that any alleged oral representations made by Defendant superseded the written terms of the integrated and unambiguous LTI Plan and incorporated RSU Certificate. See Investors Inc. Co. of Am. v. Dorinco Reins. Co., 917 F.2d 100, 104 (2d Cir. 1990) ("Parol evidence may be admitted to explain a writing only when the terms of the writing itself are ambiguous.") (citing Hanam, B.V. v. Kittay, 589 F.Supp. 1042, 1047 (S.D.N.Y. 1984) ("Parol may not be used to create an ambiguity where none exists.")).

## IV.  Breach of Implied Covenant of Good Faith and Fair Dealing (Fourth Cause of Action)

Plaintiff essentially reiterates her allegations supporting her breach of contract claim in support of her claim for breach of the implied covenant of good faith and fair dealing. A part of every contract under New York law is an "implied undertaking on the part of each party that [it] will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part." Kader v. Paper Software, Inc., 111 F.3d 337, 342 (2d Cir. 1997) (quotation and citation omitted). Plaintiff cannot state a claim for implied covenant of good faith and fair dealing.

As noted above, Section 16 of the LTI Plan provides that RSU awards are not a part of an employee's salary, and any awards received under the LTI Plan are to be excluded from termination or severance payments. Also, Section 16 states that employees have no

"rights" to awards under the LTI Plan. Therefore, Plaintiff's assertion that Defendant "deprived [her] of her right to be compensated for her performance awarded RSUs when it terminated her RSUs upon the sale of the business," Comp. ¶¶ 60-61, is contradicted by the express terms of the LTI Plan. Plaintiff also urges an inference of bad faith on Defendant's part, asserting that Defendant wrongfully awarded her RSUs for 2013, despite knowing the award would never vest due to the imminent sale of OCD. Id. ¶ 62. Again, this argument is undercut by the LTI Plan's terms. By accepting an RSU award, Plaintiff agreed that, among other things, Defendant reserved the right to amend or cancel the LTI Plan at any time without incurring liability except to the extent provided by the terms of awards already granted under the LTI Plan. As discussed above, the terms of the awards provided are contained in the RSU Certificates, which set forth the three-year vesting period and the condition that unvested awards are nullified when the employee ceases to become employed by Defendant. "[A]lthough the obligation of good faith is implied in every contract, it is the terms of the contract which govern the rights and obligations of the parties." Nat'l Westminster Bank, U.S.A. v. Ross, 130 B.R. 656, 679 (Bankr. S.D.N.Y. 1991) (citing, inter alia, Murphy v. Amer. Home Prod. Corp., 58 N.Y.2d 293 (1983)). Here, the terms of the LTI Plan set forth the parties' "contractual rights and liabilities," which may not be varied or ignored based simply on a claim that one

-22-

party has exercised a contractual right but has failed to do so in good faith. Id. (citations omitted).

**V.     Conclusion**

For the reasons discussed above, Defendant's Motion to Dismiss the Complaint For Failure to State Claim (Dkt #2) is granted, and the Complaint (Dkt #1) is dismissed in its entirety. The Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**


**s/ Michael A. Telesca**

_____
Honorable Michael A. Telesca
United States District Judge

DATED: Rochester, New York
       October 26, 2015

-23-